**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                        DISTRICT OF NEW JERSEY
```

_____
                                         :
MOHAMED SACCOH,                          :
                                         :   Civil Action No. 05-4680 (FLW)
            Petitioner,                  :
                                         :
       v.                                :        **O P I N I O N**
                                         :
DEP'T HOMELAND SECURITY, et al.,         :
                                         :
            Respondents.                 :
_____:

**APPEARANCES**:

Mohamed Saccoh, Pro Se
#21671-112
FCI Fort Dix
P.O. Box 7000
Fort Dix, NJ 08640

J. Andrew Ruymann
Assistant United States Attorney
402 East State Street, Room 430
Trenton, NJ 08608
Attorney for Respondents

**WOLFSON**, District Judge

    Petitioner Mohamed Saccoh, a prisoner confined at the Federal Correctional Institution at Fort Dix, New Jersey, filed a Petition for Writ of Mandamus, seeking to compel Respondents to clarify his asylum status to the Bureau of Prisons for the purposes of removing his Public Safety Factor as a deportable alien.  On December 15, 2005, Respondents filed a Response to the Petition.  Petitioner also filed an Emergency Motion for

Disposition on January 6, 2006.  For the following reasons, the Petition will be denied.

## BACKGROUND

In 2002, Petitioner was convicted of possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841 in the United States District Court for the Central District of California.  On November 3, 2003, Petitioner was sentenced to 41 months imprisonment.  At the time he filed the instant Petition, he was incarcerated under this sentence.

Petitioner, a native of West Africa, was granted indefinite asylum status on October 8, 1999.  However, the Bureau of Prisons ("BOP") assigned him a deportable alien Public Safety Factor ("PSF").  Due to this PSF, Petitioner is ineligible for early release under 18 U.S.C. § 3621(e) upon completion of the BOP's Residential Drug Abuse Treatment Program ("RDAP").  Petitioner attaches to his petition three letters that he wrote to various Department of Homeland Security ("DHS") offices seeking to have DHS inform the BOP that he is not removable due to his asylum status, in hopes that the PSF would be removed.  He has not received responses to the letters.

Petitioner asks this Court to "issue mandamus to the director of I[mmigration] [and] C[ustoms] E[nforcement] to certify movant's status to enable movant [to] benefit from the BOP programs that ha[ve] been denied him by the placement of a Public Safety Factor, as a deportable alien."  (Petition, p. 9).

Respondents argue that this Court does not have jurisdiction over the mandamus action because the granting of asylum is discretionary, and that regardless, Petitioner is no longer eligible for asylum status, as he was convicted of an aggravated felony. Respondents supplemented the record with a letter dated May 10, 2006, stating that Petitioner was released from BOP custody on January 27, 2006, is no longer in asylum status and is currently in removal proceedings.

## DISCUSSION

Pursuant to 28 U.S.C. § 1361, "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Mandamus, however, is an extraordinary remedy. See Heckler v. Ringer, 466 U.S. 602, 616 (1984). Certain conditions must be met before mandamus relief is granted. "Among these are that the party seeking issuance of the writ have no other adequate means to attain the relief he desires, and that he satisfy 'the burden of showing that (his) right to issuance of the writ is clear and indisputable.'" Kerr v. United States District Court, 426 U.S. 394, 403 (1976) (citations omitted). Thus, mandamus is available to Petitioner here only if he shows that he has a clear right to the relief sought, that the Respondents have a clear duty to perform, and that no other adequate remedy is available.

Petitioner cites no authority, and this Court has located none, to suggest that he has a clear right to have the PSF removed.  Petitioner does not suggest that he is not an alien; and his felony drug conviction appears to be an "aggravated felony," subjecting him to removal and the loss of asylum status.

"Any alien who is convicted of an aggravated felony at any time after admission is deportable."  8 U.S.C. § 1227(a)(2)(A)(iii).  The Immigration and Nationality Act defines an "aggravated felony" to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."  8 U.S.C. § 1101(a)(43)(B).  A drug trafficking crime, according to section 924(c) of Title 18, is defined to include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.) ... ."  Petitioner's conviction for possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841, meets this definition of "aggravated felony."  Asylum may be terminated after a conviction for an aggravated felony.  See 8 U.S.C. §§ 1158(b), (c).

Nor does the incidental effect of this detainer on his eligibility for program participation violate any constitutional right to due process or equal protection.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or enacted law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983);

4

Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995).

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

Governments, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were

5

not "atypical and significant hardships" in which a state conceivably might create liberty interest).  Petitioner does not allege either that some statute confers a liberty interest in being free from the constraints imposed against prisoners subject to an immigration detainer or that the conditions under which he is confined present "atypical and significant hardships."  Thus, Petitioner cannot establish any deprivation of his liberty interests under the Due Process Clause.

"The existence of a detainer, by itself, ordinarily does not affect the inmate's program.  An exception may occur where the program is contingent on a specific issue (for example, custody) which is affected by the detainer."  BOP Program Statement 5322.11 § 524.13.  Thus, several programs prohibit participation by persons subject to detainer.  See, e.g., BOP Program Statement 5280.08 § 570.35 ¶ 10.f. ("The Warden may not ordinarily grant a furlough to an inmate with a detainer.").  These program regulations are a proper exercise of discretion by the Bureau of Prisons.

For example, the regulation limiting participation in the early release program established in 18 U.S.C. § 3621(b) has withstood challenge by persons subject to immigration detainers.  United States Code Title 18 Section 3621(b) requires the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).

6

As an incentive for prisoners to successfully complete the program, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve."  18 U.S.C. § 3621(e)(2)(B).  Pursuant to these statutory sections, and in an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the Bureau has promulgated regulations prescribing certain additional early release criteria, <u>inter</u> <u>alia</u> excluding immigration detainees from consideration for early release.  <u>See</u> 28 C.F.R. § 550.58(a)(1)(I).  This is the type of program limitation that Petitioner mentions.

In <u>Lopez v. Davis</u>, 531 U.S. 230 (2001), the Supreme Court held that it was a proper exercise of discretion by the Bureau of Prisons to categorically deny eligibility for early release to prisoners with "a prior felony or misdemeanor conviction for homicide, forcible rape, robbery, or aggravated assault, or child sexual abuse offenses," 28 C.F.R. § 550.58(a)(1)(iv), or to prisoners whose current offense is one of certain enumerated felonies involving the use or attempted use of force, or involving the carrying, possession, or use of a firearm or other dangerous weapon, or involving sexual abuse upon children, 28 U.S.C. § 550.58(a)(1)(vi).  In reaching this conclusion, the Court first noted that the language of § 3621(e)(2)(B) grants the

7

Bureau discretion to reduce a prisoner's sentence for successful completion of a substance abuse treatment program, but fails to define any parameters by which the Bureau should exercise that discretion.

> In this familiar situation, where Congress has enacted a law that does not answer "the precise question at issue," all we must decide is whether the Bureau, the agency empowered to administer the early release program, has filled the statutory gap "in a way that is reasonable in light of the legislature's revealed design." We think the agency's interpretation is reasonable both in taking account of preconviction conduct and in making categorical exclusions.

Lopez, 531 U.S. at 242 (citing, inter alia, Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842 (1984))(other citations omitted).  Thus, "the statute's restriction of early release eligibility to nonviolent offenders does not cut short the considerations that may guide the Bureau." Lopez, 531 U.S. at 242.  See also Magnin v. Beeler, 110 F. Supp.2d 338 (D.N.J. 2000) (upholding 28 C.F.R. §550.58(a)(1)(vi), before Lopez, as a valid exercise of the Bureau's discretion).

The Court of Appeals for the Eighth Circuit has stated that it sees no difference between the categorical exclusion examined by the Supreme Court in Lopez v. Davis and the categorical exclusion of prisoners subject to an INS detainer in 28 C.F.R. § 550.58(a)(1)(I), holding that the latter is also within the Bureau's discretion.  See United States v. Lopez-Salas, 266 F.3d 842, 848 (8th Cir. 2001).  Here, the BOP programs involving transfer, halfway house, or camp, are ones in which "custody" is

8

a consideration, similar to the early release program, and Petitioner has not suggested any reason why it is unreasonable for the Bureau to take into account an immigration detainer in determining eligibility for such programs. This Court agrees with the Eighth Circuit that the existence of an immigration detainer is a legitimate factor to consider in determining eligibility for custody-related programming.

Finally, the exclusion of persons subject to an immigration detainer does not violate the Equal Protection Clause. Regulations such as those challenged here classify prisoners as those who are subject to custodial considerations (including those who have detainers lodged against them) and those who are not, not on the basis of alienage. See McLean v. Crabtree, 173 F.3d 1176, 1185-86 (9th Cir. 1999), cert. denied, 528 U.S. 1086 (2000). Accordingly, "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." See Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).

Excluding prisoners subject to detainers or other custodial considerations from participation in programs involving custody issues is rationally related to the Bureau's legitimate interest in preventing such prisoners from fleeing. See McLean v. Crabtree, 173 F.3d at 1185-86. Accordingly, the PSF, and the program limits it triggers, do not violate the Equal Protection Clause.

**CONCLUSION**

For the reasons set forth above, Petition will be denied. An appropriate order follows.


                                            S/Freda L. Wolfson
                                                  FREDA L. WOLFSON
                                        United States District Judge

Dated: June 21, 2006